**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALICEMARIE MARQUEZ, | ) | CASE NO. 1:25-CV-00293-CAB |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Alicemarie Marquez ("Marquez" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On August 23, 2022, Marquez filed an application for SSI, alleging a disability onset date of August 30, 2016. (ECF No. 7, PageID #: 43). The application was denied initially and upon reconsideration, and Marquez requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On October 24, 2023, an ALJ held a hearing, during which Claimant, represented by counsel and with the benefit of an interpreter, and an impartial vocational expert testified. (*See id.* at PageID #: 73-99). On, March 13, 2024 the ALJ issued a written decision finding Marquez

1

was not disabled.  (*Id.* at PageID #: 43-69).  The ALJ's decision became final on December 30, 2024, when the Appeals Council declined further review.  (*Id.* at PageID #: 27).

On February 14, 2025, Marquez filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 8, 9). Marquez asserts the following assignments of error:

(1) The ALJ erred when he failed to support and/or address consistency with his conclusions regarding the opinions of the treating, examining, and reviewing sources.

(2) The ALJ erred when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.

(ECF No. 8 at 1).

## III. Background

### A.  Relevant Medical Evidence

The ALJ summarized Marquez's health records and symptoms:

*Medical Evidence of Physical Impairments*

The record supports that the claimant has experienced some functional limitations related to fibromyalgia and obesity. The record supports height, weights, and body mass index ("BMI") scores consistent with the diagnosis of obesity (see e.g., BMI of 36.09 (1F/50 (09/20/21)); BMI of 36.7 (2F/4 (12/17/22); BMI of 40.2 (7F/4 (08/22/23)).

The claimant's diagnosis of fibromyalgia predates the relevant period and is well documented in the record (e.g., 1F/4; 7F/2). However, the evidence is sparse as to examination findings and reports related to fibromyalgia. Between September of 2021 and December of 2022, there are no remarkable examination findings or reports. Rather, at the claimant's September 2021 physical, her provider note [sic] that she had not been seen in over a year, and her examination was unremarkable (1F/50-51 (09/20/21)). At a follow-up examination a few weeks later, the claimant reported worsening fibromyalgia symptoms, and her provider discussed changing her fibromyalgia medication depending upon interactions with the claimant's mental health medication (1F/48-49

2

(10/07/21)). Otherwise, there are no records of examinations related to the claimant's physical impairments until December of 2022. At the claimant's mental health examinations during that time, she reported pain on only one occasion between September of 2021 and October of 2022 (1F/42 (06/10/22) (reporting back and joint pain at 4/10 severity); see generally 1F).

At a consultative examination on December 17, 2022, the claimant attended with her mother and reported, among other things, pain, swelling, numbness, dizziness, fatigue, shortness of breath, and nausea from fibromyalgia (2F/2). The claimant also reported that her fibromyalgia mainly impacted her bilateral shoulders and hands in that she has pain and weakness (2F/6). On examination, the claimant's gait was steady and symmetric; her straight leg test was negative; her sensation and reflexes were normal throughout; she had tenderness in her cervical spine, thoracic spine, lateral shoulders, and her acromioclavicular (AC) joint bilaterally; she was able to lift, carry, and handle light objects; her fine and gross manipulation were grossly normal (2F/5). She could squat and rise with ease, could rise from sitting without assistance, and got up and down from the exam table with ease. Her heel-toe walk and tandem walking were normal. She could stand and hop on one foot bilaterally. She had good range of motion in all of her extremities. She had some weakness in her bilateral upper extremities, but her lower extremities had normal strength, sensation, and motor function, and she had good balance (2F/6, 8-13).

Several months later, the claimant reported to her therapist that she had difficulty sleeping due to fibromyalgia (3F/17 (02/15/23); 3F/18 (02/22/23)). When the claimant had a routine follow-up with her physician in March of 2023, she had not been seen for "some time" prior; her medications were continued and she was recommended for a follow-up in a few months (7F/11- 15 (03/28/23)). About five months after that, the claimant visited her provider to have paperwork for her claim filled out; she reported that her fibromyalgia was worse in her bilateral hands and that she had back pain; on examination, she had normal range of motion in her spine; her mood, affect, and behavior were normal; and her examination was otherwise unremarkable (7F/2-10 (08/22/23)).

…

*Medical Evidence of Mental Impairments*

The record supports that the claimant has experienced functional limitations related to attentiondeficit hyperactivity disorder

3

("ADHD"), generalized anxiety disorder ("GAD"), adjustment disorder, depressive disorder, borderline personality disorder, social anxiety disorder, and borderline intellectual functioning ("BIF"). The claimant has received specialized mental health treatment, and she takes medication for her mental health. Overall, the record supports that the claimant's medication helps, and therapy has improved the claimant's symptoms.

The claimant underwent an assessment for ADHD in October of 2022. As part of that assessment, the claimant underwent a Wechsler Adult Intelligence Scale (WAIS-IV) and Connors Continuous Performance Test (CPT-3). The claimant's WAIS-IV and CPT-3 scores met the threshold for ADHD diagnosis, and some of the claimant's WAIS-IV scores also showed BIF (3F/3-5 (10/20/22)).

The claimant's remarkable mental status examination findings and reports include the following: in June of 2022, she reported doing "ok" and having improvement in her depressive symptoms; she also reported not having panic attacks but feeling increased anxiety when out unaccompanied. During a telephone examination, the claimant was cooperative; her speech was normal; her mood was anxious; her attention and concentration were sustained; her memory was within normal limits; and her judgment and insight were fair. Her provider adjusted her mental health medication and recommended continuing psychotherapy (1F/40-44 (06/10/22)). During a counseling appointment that same day, the claimant was cooperative; her speech was normal; her judgment and insight were good; her memory was within normal limits; her attention and concentration were sustained; her mood was euthymic; and her affect was constricted (1F/38-40 (06/10/22)).

The claimant attended counseling throughout 2022, and her earlier examinations show some remarkable findings. For example, in June of 2022, the claimant reported that she would be attending an event the next day with friends. On examination, she was cooperative; her speech and thought processes were normal; her judgment and insight were fair; her memory was within normal limits; her attention was sustained; her fund of knowledge was okay; her mood was euthymic and anxious; and her affect was full range (1F/36-38 (06/17/22)). At her next appointment, her mood was dysphoric and her affect was constricted, but her examination was otherwise substantially similar (1F/34-36 (06/24/22)). The claimant failed to attend her next several appointments (1F/34 (07/01/22; 07/08/22; 07/21/22)). When she resumed, the claimant reported increasing anxiety and feeling unfocused; on examination,

4

she was cooperative, her speech was normal; her thought process was logical and organized; her judgment and insight were fair; her memory was within normal limits; her attention was sustained; her fund of knowledge was okay; her mood was euthymic; and her affect was constricted (1F/32-33 (07/28/22)). There was also an instance in which the claimant reported feeling depressed; on examination, she was withdrawn; her speech was slowed; her thought process was vague; her judgment and insight were fair; her memory was normal; her attention was sustained; her fund of knowledge was okay; her mood was depressed; and her affect was constricted (1F/30-32 (08/04/22)). She later reported difficulty identifying and experiencing emotions, as well as issues with memory and focus; on examination, her thought process was vague, her mood was dysphoric, and her affect was flat, but the findings were otherwise unremarkable (1F/28-30 (08/11/22)). A week later, her mood was dysphoric, and her affect was constricted, but her examination was otherwise unremarkable (1F/26-28 (08/18/22)).

The claimant reported to her mental health nurse practitioner that she was doing "ok," she had been coming out of her room more often, and her depression was much better; she also reported watching a game with eight other people a week before. During the appointment, the claimant's mother also reported that the claimant was having difficulty with self-care and needing reminders to attend to grooming. On examination, the claimant was cooperative, her mood was anxious, and her judgment and insight were fair. The nurse practitioner adjusted the claimant's medication (1F/23-26 (08/25/22)).

While the claimant's reports to her counselor were sometimes remarkable in the latter part of 2022, her examinations generally were not, and the claimant began reporting improvements in her mental health with continued therapy. The claimant reported her mood was causing her to neglect her hygiene; on examination, she was cooperative; her speech was normal; her thought process was logical and organized; her judgment and insight were fair; her memory was normal; her attention and concentration were sustained; her fund of knowledge was okay; her mood was euthymic, and her affect was full (1F/22-23 (08/26/22)). At her next appointment, her mood was dysphoric, and her affect was constricted, but her examination was otherwise unremarkable (1F/20-21 (09/01/22)). The claimant reported looking forward to, but also being nervous about, a gaming weekend; her mood was euthymic, but her examination was otherwise substantially similar (1F/18-20 (09/08/22)). She later reported a successful experience

5

at a social event and improvements in self-care and hygiene; and her examination was unremarkable (1F/16-18 (09/14/22)). The claimant reported nerves and anxiety about attending an upcoming public event; on examination, she was cooperative and restless; her mood was euthymic; her affect was constricted; and the remainder of her examination was unremarkable (1F/14-16 (09/22/22)). She reported anxiety; and on examination, she was cooperative and withdrawn; her speech was slowed; her thought process was vague; her mood was dysphoric; and her affect was flat (1F/13- 14 (09/29/22)). The claimant reported avoiding an event because of her anxiety, but her examination was unremarkable (1F/11-12 (10/12/22)). The claimant also reported having COVID and canceling a recent event due to anxiety; on examination, her mood was anxious, but the balance of the examination as unremarkable (1F/8-10 (10/26/22)). About a month later, the claimant was cooperative; her speech was normal; her thought processes were logical and organized; her judgment and insight were good and fair; her memory was normal; her attention and concentration were sustained; her fund of knowledge was okay; her mood was euthymic; and her affect was full range (7F/16-24 (11/23/22)).

At a consultative physical examination on December 17, 2022, the claimant attended with her mother and reported depression, difficulty sleeping, and crying spells. On examination, the claimant was alert; she had good eye contact and fluent speech; her mood was appropriate; she had clear thought processes; and her memory and concentration were good (2F/5). She also was cooperative (2F/6, 8-13).

The claimant also sought and underwent therapy, which demonstrates significant improvement in her symptoms over time. Initially, she reported increasing anxiety and a desire to change medication (3F/7-8 (12/14/22)). But the claimant then reported improved hygiene and motivation to apply for school (3F/15 (12/28/22)). She also reported that therapy techniques were helpful and she had been more motivated to get things, like self-care, done (3F/13 (01/04/23)). Throughout the course of therapy, the claimant reported some anxiety (e.g., 3F/11 (01/17/23); 3F/17 (02/15/23); 6F/5 (09/06/23)), some lack of motivation to complete self-care (e.g., 3F/11 (01/17/23)), and stress surrounding family events and schooling (e.g., 6F/27 (06/24/23); 6F/17 (07/19/23); 6F/13 (07/26/23); 6F/9 (08/23/23)). On one occasion, she also reported increased depression, but she also reported not taking her medication for the last few days (6F/43 (03/22/23)) and the issue resolve [sic] with taking her medication regularly (6F/41 (03/29/23; 6F/35 (05/17/23)). Otherwise, the claimant reported

lessening anxiety (e.g., 6F/31 (06/07/23)), improvement in her sleep (e.g., 3F/10 (01/25/23); 6F/31 (06/07/23)), improvements in her self-care and hygiene (e.g., 3F/20 (03/08/23); 6F/31 (06/07/23)), and overall improvement in her thoughts or mood (e.g., 3F/20 (03/08/23); 6F/5 (09/06/23); 6F/3 (09/13/23); 6F/1 (09/20/23)). Moreover, the claimant reported being able to be social; for example, she went to a friend's house and celebrated a friend's birthday even though she had been anxious, sad, and upset (3F/18 (02/22/23)); she reported looking forward to spending time with friends (3F/20 (03/08/23)); she attended Comicon with friends despite anxiety (6F/41 (03/29/23)); she attended a family celebration (6F/29 (06/21/23)); she reported improvements in seeking out social situations (6F/15 (08/02/23)); she reported feeling that she had progressed since starting therapy because she could make her own calls, spend time with friends, and meet new people, even though she felt anxious (6F/11 (08/09/23)); she reported attending a social event despite being anxious (6F/7 (08/30/23)); she reported plans to attend a masquerade ball and a family member's wedding (6F/5 (09/06/23)). At a follow-up with her nurse practitioner, the claimant reported decreased depression (7F/1 (09/11/23)).

(ECF No. 7, PageID #: 54-57).

### B. Opinion Evidence at Issue

In reaching his decision, the ALJ considered the previous opinions from the State agency medical and psychological consultants; the opinion of consultative examiner Dr. Paul Oh; and opinions from Plaintiff's providers, including Dr. Francheska Caminero, Dr. Deborah A. Koricke (with her interns Cynthia Cohen and Dr. Elyra Gonzalez), Margaret Onyeukwu, and Michael Allen.  (ECF No. 7, PageID #: 61-67).  The ALJ's discussion of the opinions is set forth in greater detail below in conjunction with Plaintiff's arguments.

### IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since August 23, 2022, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments: fibromyalgia; obesity; attention-deficit hyperactivity disorder ("ADHD"); generalized anxiety disorder ("GAD"); adjustment disorder; depressive disorder; borderline personality disorder; social anxiety disorder; and borderline intellectual functioning ("BIF") (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ladders, ropes, and scaffolds; she can frequently reach overhead and frequently handle; she must avoid hazards such as unprotected heights and moving machinery, but she could avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people or vehicles; she is limited to a static work environment where she would be able to tolerate few changes in a routine work setting and when said changes occur, any changes in job duties are explained; she can perform simple tasks; she can perform routine and repetitive tasks; she can have occasional interaction with coworkers; and she can have occasional superficial interaction with public (where superficial means that if a member of the public were to approach to ask directions to the nearest restroom, she could provide such information, but that would be the extent of the interaction).

    …

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 23, 2022, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 7, PageID #: 45-46, 51, 68-69).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.912(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Marquez raises two issues on appeal: 1) whether the ALJ erred when he failed to support and/or address consistency with his conclusions regarding the opinions of the treating, examining, and reviewing sources; and 2) whether the ALJ erred when he failed to properly apply Social Security Ruling ("SSR") 98-6p and consider all of Plaintiff's impairments and limitations when crafting the RFC.  (ECF No. 8 at 1).  In response, the Commissioner argues Plaintiff has forfeited her arguments due to her failure to follow the requirements of the Court's initial order and Plaintiff's challenges otherwise fail on the merits.  (ECF No. 9 at 10-21).

### 1.  Compliance with the Initial Order

Before addressing the merits of Plaintiff's issues, the Commissioner argues Plaintiff has waived her arguments because she failed to comply with the Court's Initial Order.  (ECF No. 9 at 10).  The Commissioner asserts that the Initial Order required a statement of relevant facts "supported by a specific reference to the transcript page number on which that fact is found" but Plaintiff "failed to cite *any* objective medical evidence in her 'Statement of Facts' and repeatedly

10

cited to facts in her argument that were not included in her 'Statement of Facts.'" (*Id.*). Plaintiff did not file a reply and therefore failed to respond to Defendant's argument.

As Defendant correctly indicates, the Initial Order requires a statement of facts supported with citations and cautions that "[a]ny fact in the transcript not referred to in a party's Statement of Relevant Facts may be deemed non-essential to the determination of the issues presented." (ECF No. 5 at 3). However, contrary to the Defendant's representations, Plaintiff provides at least a passing citation to each of the medical opinions she challenges. (*See* ECF No. 8 at 2-3). While Plaintiff's statement of facts would certainly have benefited from the inclusion of the additional facts she cited later in her argument, the undersigned does not believe a finding of waiver is warranted in this instance. Instead, Plaintiff's counsel is cautioned that continued future failure to include all relevant facts in her Statement of Facts may result in a finding of waiver.

### 2.   Consideration of Medical Opinions

Plaintiff's first argument is that the ALJ failed to properly consider the medical opinions in determining her RFC. (ECF No. 8 at 7).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 416.920c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice,

if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

### a.  Onyeukwu and Allen

Plaintiff first challenges the ALJ's consideration of Mental Health Questionnaires completed by Onyeukwu and Allen, arguing the ALJ "erroneously found that Plaintiff's condition improved regarding her anxiety and social interactions" but failed to consider that Plaintiff "needed to create routines and not allow her anxiety to control her actions" and was "attending counseling on a weekly basis." (ECF No. 8 at 9-10). The Commissioner argues the ALJ reasonably found these opinions unpersuasive and substantial evidence supports this decision. (ECF No. 9 at 11-14).

The ALJ summarized the opinions and explained his consideration of them as follows:

> The undersigned finds unpersuasive the opinions of the claimant's psychiatric health nurse practitioner, Margaret Onyeukwu, dated June 22, 2022 (1F/69-70), and her mental health counselor, Michael Allen, LPCC-S, dated June 13, 2022 (1F/75-76). CNP Onyeukwu opined that the claimant is either unable to meet competitive standards or is seriously limited in all mental functional areas except carrying out very short and simple instructions. NP Onyeukwu further opined that the claimant is not

12

able to sustain work and/or is unable to work. Similarly, counselor Allen opined that the claimant is unable to meet competitive standards with regard to maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, asking simple questions or requesting assistance, and setting realistic goals or making plans independently of others; that she has serious limitations in completing a normal workday and workweek, performing at a consistent pace without an unreasonable number and length of rest periods; remembering locations and work-like procedures, interacting appropriately with the general public, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in responding appropriately to changes in the work setting. He further opined that the claimant would be absent from work 14 days per month and would be off task for 5 hours in an 8-hour workday due to the symptoms of her impairments. CNP Onyeukwu's opinion that the claimant is unable to sustain work and/or cannot work is on an issue reserved to the Commissioner and therefore is inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c) and will not be analyzed further. As to counselor Allen, the undersigned notes that a licensed professional counselor is not an acceptable medical source for purposes of our regulations (see 20 CFR 416.902(a)). Nonetheless, the undersigned considered both providers' treatment of the claimant to inform the residual functional capacity finding. To the extent that these opinions suggest that the claimant experiences work-preclusive levels of off-task behavior and absenteeism, they are neither supported with these providers' examinations of the claimant, nor are they consistent with the other evidence of record. Although these providers' other findings as to the claimant's mental functional limitations are not entirely unsupported by their own examinations of the claimant (e.g., as to CNP Onyeukwu, 1F/23-26, 40-44; 7F/1; and as to counselor Allen, see generally 1F and 7F), later examinations with the claimant after the dates of these opinions showed improvement in the claimant's anxiety and in her social interactions, and her examination findings were largely unremarkable (e.g., 1F/14-18; 7F/16-24). Moreover, the more complete medical record does not support finding that the claimant has more than moderate limitations in any area of mental functioning. As to the claimant's memory, the claimant's examinations do not give any indication that her memory is anything other than unremarkable (e.g., 1F/36-38; 1F/32-33; 1F/26-28; 7F/16-24). While there is some indication that the claimant had difficulty completing tasks such as self-care/grooming (e.g., 3F/11 (01/17/23)), this improved significantly with therapy (e.g., 3F/20 (03/08/23); 6F/31 (06/07/23)). The

13

claimant also reported that she can care for her injured mother and for pets (4E/3; 9E/2; Testimony). Her hobbies include reading, writing, listening to music, and playing video games, all of which require some measure of concentration (4E/6). She can follow written and spoken instructions "decently well" (4E/7). Her examinations generally show that her attention and concentration were sustained (e.g., 1F/36-38 (06/17/22); 1F/32-33 (07/28/22); 1F/30-32 (08/04/22); 1F/22-23 (08/26/22); 7F/16-24 (11/23/22)). As to the claimant's social anxiety and difficulty interacting with others, the claimant's counseling and therapy records show that the claimant reported being able to be more social; she went to a friend's house and celebrated a friend's birthday even though she had been anxious (3F/18 (02/22/23)); she attended Comicon with friends despite anxiety (6F/41 (03/29/23)); she attended a family celebration (6F/29 (06/21/23)); she reported improvements in seeking out social situations (6F/15 (08/02/23)); she reported feeling that she had progressed since starting therapy because she could make her own calls, spend time with friends, and meet new people, even though she felt anxious (6F/11 (08/09/23)); she reported attending a social event despite being anxious (6F/7 (08/30/23)); and she reported plans to attend a masquerade ball and a family member's wedding (6F/5 (09/06/23)). After reviewing the evidence of record available to them, including some of the aforementioned examination findings and reports, the state agency psychological consultants opined that the claimant is capable of concentrating, persisting, and maintaining pace to carry out a simple learned routine in a structured and predictable work setting; she has some limitations in interacting with supervisors, coworkers, and the general public; and she is capable of adapting to a setting in which duties are routine and predictable (2A/7-8; 4A/8-9). This evidence is not consistent with the CNP and counselor's opinions that the claimant is either unable to meet competitive standards or is seriously limited in nearly all mental functional areas. Accordingly, the undersigned finds these opinions unpersuasive.

(ECF No. 7, PageID #: 66-67).

This discussion makes clear that the ALJ adequately addressed the supportability and consistency of the opinions.  As to supportability, the ALJ specifically noted that while Allen's and Onyeukwu's treatment notes supported some mental limitations, they did not support the work preclusive limitations opined because Plaintiff's "examinations do not give any indication

that her memory is anything other than unremarkable" and "generally show that her attention and concentration were sustained." (*Id.* at PageID #: 66-67; *see id.* at PageID #: 296-97, 301, 305, 307, 311). The ALJ also considered consistency with the overall medical record, indicating that the record was not consistent with the preclusive limitations because there was improvement in Plaintiff's anxiety and social interactions over time and Plaintiff's reported hobbies required at least some level of concentration. (*Id.* at PageID #: 66-67; *see id.* at PageID #: 289, 291, 389, 426). The cited evidence is sufficient to support the ALJ's conclusions regarding the opinions.

To the extent Plaintiff argues the ALJ failed to consider a single specific record indicating that Plaintiff needs to "create routines," or that Plaintiff was in weekly therapy, such argument is unavailing. Rather, the record Plaintiff cites from a therapy session in September 2023 supports the ALJ's overall conclusion that Plaintiff's impairments improved with treatment such that the work preclusive limitations were unnecessary. (*See* ECF No. 7, Page ID #: 398 (discussing Plaintiff's attempt to create positive routines and how "she is feeling good" and "not allowing her anxiety to control her").

### b. Koricke and Gonzalez

Plaintiff next challenges the ALJ's consideration of a questionnaire completed by Koricke and Gonzalez. (ECF No. 8 at 10). Plaintiff argues that in finding the opinion unsupported because Plaintiff reported lessening anxiety, the ALJ failed to consider additional records showing she continued to struggle with depression and anxiety. (*Id.* at 10-11). The Commissioner argues the ALJ properly considered the opinion and Plaintiff's reciting of "a few subjective statements about her anxiety in an effort to show that the ALJ erred" does not change that the ALJ's decision is supported by substantial evidence. (ECF No. 9 at 14).

The ALJ discussed his consideration of the relevant questionnaire as follows:

The undersigned finds unpersuasive the opinions of the claimant's clinical psychology providers, Elyra Gonzalez, Ph.D. intern, and Deborah A. Koricke, Ph.D., dated July 1, 2023 (4F), opining that the claimant has no useful ability to function in nearly all areas of concentration and persistence and in all areas of adaptation; that she is unable to meet competitive standards as to understanding and memory and as to social interactions; that the claimant would be absent from work every day due to her impairments or treatment; and that the claimant would be off-task 100% of an 8-hour work day (4F). The opinion is not supported by Ms. Gonzalez's own treatment records with the claimant. Throughout the course of therapy with Ms. Gonzalez, the claimant reported some anxiety (e.g., 3F/11, 17; 6F/5), some lack of motivation to complete self-care (e.g., 3F/11), and stress surrounding family events and schooling (e.g., 6F/9, 13, 17, 27). Otherwise, the claimant reported lessening anxiety (e.g., 6F/31), improvement in her sleep (e.g., 3F/10; 6F/31), improvements in her self-care and hygiene (e.g., 3F/20; 6F/31), and overall improvement in her thoughts or mood (e.g., 3F/20; 6F/1, 3, 5). Moreover, the claimant reported being able to be social and interact with others despite being anxious (e.g., 3F/18, 20; 6F/5, 7, 11, 15, 29, 41). The more complete medical record supports that the combination of medication, counseling, and therapy improved the claimant's symptoms such that she has no more than moderate limitations in the areas of mental functioning. As to the claimant's memory, the claimant's examinations do not give any indication that her memory is anything other than unremarkable (e.g., 1F/36-38; 1F/32-33; 1F/26-28; 7F/16-24). While there is some indication that the claimant had difficulty completing tasks such as self-care/grooming (e.g., 3F/11 (01/17/23)), this improved significantly with therapy (e.g., 3F/20 (03/08/23); 6F/31 (06/07/23)). The claimant also reported that she is able to care for her injured mother and for pets (4E/3; 9E/2; Testimony). Her hobbies include reading, writing, listening to music, and playing video games, all of which require some measure of concentration (4E/6). She is able to follow written and spoken instructions "decently well" (4E/7). Her examinations generally show that the claimant's attention and concentration were sustained (e.g., 1F/36-38 (06/17/22); 1F/32-33 (07/28/22); 1F/30-32 (08/04/22); 1F/22-23 (08/26/22); 7F/16-24 (11/23/22)). These findings are not consistent with the opinion that the claimant has no useful ability to function or is unable to meet competitive standards in these areas. Moreover, there is no evidence in the record to support that the claimant would experience work-preclusive levels of absenteeism or off-task behavior. Because this opinion is neither supported by the providers' own examinations of the claimant nor is it consistent

> with the more complete medical record, the undersigned finds it
> unpersuasive.

(ECF No. 7, PageID #: 65-66).

The ALJ adequately discussed the supportability and consistency factors in finding this

opinion unpersuasive.  The ALJ noted that there was not support for the opinion in Gonzalez's

treatment records because while Plaintiff reported anxiety, stress, and grooming struggles on

occasion, she overall reported lessening anxiety; improvement with her sleep, self-care, and

mood; and increased social interactions.  (ECF No. 7, Page ID #: 379 (improvement in sleep);

396, 398, 400, 402 (improvement in grooming and overall feeling better); 406 (recognizing

improvement with therapy); 410, 436 (increased focus on social activities)).  As with Allen's and

Onyeukwu's opinions, the ALJ found Koricke's and Gonzalez's opinion inconsistent with the

overall medical record, citing Plaintiff's unremarkable memory on examination; improvement

with therapy; and Plaintiff's reported hobbies.  (*Id.* at PageID #: 65-66; *see id.* at PageID #: 289,

291, 389, 426).  Substantial evidence supports the ALJ's analysis of this opinion.

### c.  Cohen and Koricke

Within her challenge to Gonzalez's and Koricke's opinion, Plaintiff appears to assert a

conclusory challenge to the ALJ's consideration of the opinion of Cohen and Koricke.  (ECF No.

8 at 11-12).  The entirety of Plaintiff's argument as to the opinion reads:

> The ALJ then found that earlier assessments from Dr. Koricke
> were partially persuasive. This assessment, however, dealt with
> testing which confirmed that Plaintiff had ADHD and borderline
> intellectual functioning. Per the ALJ, "the more complete medical
> record shows some degree of impairment in the claimant's ability
> to understand, remember, or apply information." Although he cited
> records in his analysis, the totality of the information failed to
> provide support for his determination and was not consistent with
> the medical information in the records. The ALJ's finding,
> therefore, was in error as it was not supported by substantial
> evidence in the record. This error was harmful necessitating a

17

remand of this matter.

(*Id.* (record citations omitted)).

The ALJ considered this opinion and explained his reasoning for finding it partially persuasive:

> The undersigned finds partially persuasive the opinions of Cynthia Cohen, M.A., intern, and Deborah A. Koricke, Ph.D., dated October 20, 2022, and April 10, 2023 (3F) opining that the claimant's assessment scores warranted a diagnosis of ADHD, and further opining that the claimant would be likely to experience memory deficits and slower cognitive speeds. Ms. Cohen's credentials are not evident in the record and it is unclear whether she is an acceptable medical source under our regulations. Even if she is not, Dr. Koricke's signature on the opinion appears to signify that Dr. Koricke adopted the opinion, and Dr. Koricke is an acceptable medical source. That said, the undersigned finds this opinion partially persuasive insofar as the claimant has been diagnosed with ADHD, because the diagnosis is supported by the assessments issued by Cohen and Koricke and is generally consistent with the other evidence of record. However, the opinion does not opine as to the mental functional limitations that the claimant experiences in a work context; rather, the opinion contains only the observation that the claimant is likely to experience memory deficits and slower cognitive speeds. Although the claimant's assessment results with Cohen and Koricke show some deficits in these areas, the claimant's examination findings consistently demonstrate that her memory was within normal limits, and her fund of knowledge was okay (e.g., 1F/40-44 (06/10/22); 1F/38-40 (06/10/22);1F/36-38 (06/17/22); 1F/34-36 (06/24/22)); 1F/32-33 (07/28/22); 1F/30-32 (08/04/22); 1F/26-28 (08/18/22); 1F/22-23 (08/26/22); 7F/16-24 (11/23/22)). There are some instances in which she reported issues of memory, but her examination was unremarkable (e.g., 1F/28-30 (08/11/22)). At a consultative physical examination, the claimant's memory was good (2F/5). The claimant's therapy notes indicate that the claimant needed encouragement and reminders to engage in good grooming and hygiene (e.g., 3F/11 (01/17/23); 3F/20 (03/08/23); 6F/31 (06/07/23)). Thus, while the more complete medical record shows some degree of impairment in the claimant's ability to understand, remember, or apply information, it does not show that the claimant has experienced significant difficulty in these areas of mental functioning as a result. Accordingly, the undersigned finds this opinion partially persuasive.

(ECF No. 7, PageID #: 64-65).

Based on Plaintiff's argument, it is unclear what aspect of the ALJ's consideration of the opinion she challenges.  Nor is it clear on review how the opinion's conclusion that Plaintiff had ADHD and would potentially suffer from memory deficits and slower cognitive speeds is inconsistent with the ALJ's adopted RFC, which limited Plaintiff to "a static work environment" with "few changes in a routine work setting" with any changes in the job duties being explained; simple, routine and repetitive tasks; and superficial interaction with the public.  (ECF No. 7, PageID #: 51).  The ALJ's discussion makes clear that while he found the opinion supported by the test results included in the opinion, Cohen and Koricke did not opine as to specific limitations in a work context.  To the extent the opinion could be construed as finding Plaintiff had limitations based on likely memory deficits and slower cognitive speeds, the ALJ found limitations greater than those contained in the RFC were inconsistent with the record evidence that Plaintiff's memory was within normal limits and her fund of knowledge was okay.  Thus, the ALJ properly considered the opinion, and his analysis is supported by substantial evidence.

### d.  Caminero

Plaintiff next challenges the ALJ's consideration of Caminero's opinion, arguing the ALJ "selectively chose which parts of the opinion to find persuasive" and this "piecemeal and selective analysis of this opinion was in error as it was neither supported by nor consistent with the medical records."  (ECF No. 8 at 12).  The Commissioner responds that substantial evidence supports the ALJ's evaluation of the opinion and under Sixth Circuit case law, what Plaintiff characterizes as "cherry-picking" is simply "weighing the evidence."  (ECF No. 9 at 15-16) (citing *Griffith v. Comm'r of Soc. Sec.*, No. 1:23-cv-618, 2023 WL 9271172, at *10 (N.D. Ohio Dec. 11, 2023)).

The ALJ discussed Caminero's opinion as follows:

> The undersigned finds partially persuasive the opinion of the claimant's provider Francheska Caminero, D.O., dated August 22, 2023 (5F). Dr. Caminero treats the claimant's fibromyalgia and opined that the claimant is capable of sitting for 120 minutes at one time, standing for 15 minutes at one time, and sitting for at least 6 hours in an 8-hour workday; she would require unscheduled breaks a few times each day; she can frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; she is limited to reaching handling, and fingering 50% of the time; she is likely to be off-task for 20% of a work day; she is capable of low stress work; and that she is likely to be absent four days per month due to her impairments or treatment (5F/2-4). Dr. Caminero's opinion as to the claimant's ability to stand and walk total in an 8-hour workday is unclear because her check mark on the form falls between the boxes for "less than 2 hours" and "about 2 hours" (5F/2). The undersigned finds Dr. Caminero's opinion partially persuasive insofar as Dr. Caminero has a treating relationship with the claimant, and her opinions as to the claimant's sitting, limitations on lifting over 50 pounds, and capability for low stress work are generally consistent with the other evidence of record. However, there is no clear support for Dr. Caminero's opinion otherwise because the only treatment note from Dr. Caminero in the record is from an appointment where the claimant sought to have her claim paperwork filled out, and the claimant's examination was unremarkable (7F/2-10 (08/22/23)). Dr. Caminero's opinions as to more significant limitations on the claimant's standing, need for unscheduled breaks, lifting, reaching, handling, fingering, her off-task behavior, and her absenteeism, are not clearly supported, nor are they consistent with the more complete medical record. Between September of 2021 and December of 2022, there are no remarkable examination findings or reports. Rather, at the claimant's September 2021 physical, her provider noted that she had not been seen in over a year, and her examination was unremarkable (1F/50-51 (09/20/21)). At a follow-up examination a few weeks later, the claimant reported worsening fibromyalgia symptoms, and her provider discussed changing her fibromyalgia medication depending upon interactions with the claimant's mental health medication (1F/48-49 (10/07/21)). Otherwise, there are no records of examinations related to the claimant's physical impairments until December of 2022. At the claimant's mental health examinations during that time, she reported pain on only one occasion between September of 2021 and October of 2022 (1F/42 (06/10/22) (reporting back and joint pain at 4/10 severity); see generally 1F). The results of the

claimant's consultative examination are not consistent with Dr. Caminero's opinions, either: the claimant's gait was steady and symmetric; her straight leg test was negative; her sensation and reflexes were normal throughout; she had tenderness in her cervical spine, thoracic spine, lateral shoulders, and (AC) joint bilaterally; she was able to lift, carry, and handle light objects; her fine and gross manipulation were grossly normal; she could squat and rise with ease, could rise from sitting without assistance, and got up and down from the exam table with ease; her heel-toe walk and tandem walking were normal; she could stand and hop on one foot bilaterally; she had good range of motion in all of her extremities; she had some weakness in her bilateral upper extremities, but her lower extremities had normal strength, sensation, and motor function, and she had good balance (2F/5-6, 8-13). There are no examination findings that support the significant degree of limitation that Dr. Caminero has opined as to the claimant's standing, need for unscheduled breaks, lifting, reaching, handling, fingering, her off-task behavior, or her absenteeism. But since Dr. Caminero's opinion as to the claimant's sitting, lifting of heavier objects, and capability for low-stress work are otherwise supported and consistent with the record, the undersigned finds this opinion partially persuasive.

(ECF No. 7, PageID #: 63-64).

As noted by the ALJ in his discussion, the only treatment record from Caminero was on August 22, 2023, when Plaintiff's chief complaint was needing disability paperwork completed. (*Id.* at PageID #: 443). At this visit, Plaintiff's subjective complaints of back pain and painful hand swelling were noted, but examination revealed Plaintiff had normal range of motion with no other significant findings. (*Id.* at PageID #: 445-47). Thus, as the ALJ concluded, Caminero's opinion was not supported by her own treatment notes. Additionally, the ALJ concluded Caminero's opinions concerning standing, lifting, reaching, handling, fingering, off-task behavior, absenteeism, and need for breaks were inconsistent with the record, which showed minimal treatment related to Plaintiff's pain and large gaps between visits. (*Id.* at PageID #: 324-25 (September 20, 2021 note that Plaintiff had not been seen in over one year and denied pain or swelling)). Contrary to Plaintiff's arguments, the ALJ adequately explained his

21

consideration of the opinion and his reasoning for finding it only partially persuasive, with appropriate explanation of the supportability and consistency of the opinion.

### e. Oh

Plaintiff next challenges the ALJ's consideration of Oh's opinion, arguing that the ALJ "adopted those parts of the record which supported his RFC and found that the portions of the record addressing reaching, fingering, and feeling were not consistent with the record" but Oh "supported his findings by noting that [Plaintiff] had point tenderness and weakness in her bilateral upper extremities." (ECF No. 8 at 11-12).  The Commissioner responds that "the ALJ directly addressed Dr. Oh's opinion as to Plaintiff's abilities with her arms and explained why they were not supported by Dr. Oh's examination findings and were inconsistent with other evidence in the record." (ECF No. 9 at 17).

The ALJ explained his consideration of Oh's opinion:

> The undersigned finds partially persuasive the opinion of consultative examiner Paul Oh, M.D., dated December 17, 2022 (2F). Dr. Oh opined that the claimant has no limitations with sitting, but mild limitations with standing, walking, and lifting; she has no significant limitations with carrying weight or postural activities; she is limited to frequent reaching, grasping, handling, fingering, and feeling; and she had no other visual, communicative, or workplace environmental limitations (2F/7). The undersigned understands the reference to grasping to be part and parcel of handling. The undersigned also acknowledges that the term "mild" is vague. However, the undersigned finds Dr. Oh's opinions as to sitting, standing, walking, lifting, carrying weight, postural activities, grasping, and handling to be supported and consistent with the record. These opinions are consistent with a finding of light exertion with some limitations on postural activities, and they are supported by Dr. Oh's examination of the claimant: the claimant's gait was steady and symmetric; her straight leg test was negative; she could squat and rise with ease, could rise from sitting without assistance, and got up and down from the exam table with ease. Her heel-toe walk and tandem walking were normal. She could stand and hop on one foot bilaterally. She had good range of motion in all of her extremities. Her lower extremities had normal

strength, sensation, and motor function, and she had good balance (2F/5-6, 8-13). In contrast, the undersigned is not persuaded by Dr. Oh's opinions as to reaching, fingering, and feeling because they are not supported by Dr. Oh's examination findings. As to reaching, Dr. Oh's opinion does not specify limitations in any particular plane, so it appears to limit the claimant's reaching across all planes and, as such, is overly restrictive. On examination, the claimant had some weakness in her bilateral upper extremities, but her sensation and reflexes were normal throughout; she had tenderness in her spine and shoulders, but she was able to lift, carry, and handle light objects; and her fine and gross manipulation were grossly normal (2F/5). She also had good range of motion in all of her extremities (2F/6, 8-13). These findings do not support significant limitations on reaching across planes other than overhead, nor do they support limitations on fingering or feeling. These limitations are also not consistent with the other evidence of record because the claimant's examinations generally do not show limitations in her sensation, reflexes, range of motion, strength, or coordination that would support limiting her reaching in other planes, fingering, or feeling (e.g., 1F/50-51 (09/20/21); 7F/6 (08/22/23)). This evidence suggests that the portions of Dr. Oh's opinion addressing reaching, fingering, and feeling are not consistent with the record. Accordingly, the undersigned finds this opinion partially persuasive.

(ECF No. 7, PageID #: 63).

With respect to his rejection of Oh's opinions concerning Plaintiff's reaching, fingering, and feeling, the ALJ adequately explained why such were not supported by or consistent with the record.  He specifically noted that while Oh indicated Plaintiff had tenderness in her spine and shoulders, she was still able to lift, carry, and handle light objects, had normal manipulation, and good range of motions such that a finding restricting reaching in *all* planes rather than simply overhead was not supported.  (*Id.*; *see id.* at PageID #: 361-63).  The ALJ further noted that the limitations were not consistent with the overall record because other examinations did not show limitations in sensation, reflexes, range of motion, strength, or coordination.  (*Id.* at PageID #: 63; *id.* at 324-25 (examination noting normal extremities without discussion of limitations), 447 (noting normal general and cervical range of motion)).  Thus, the ALJ did not err in considering

this opinion.

### f.  State Agency

Finally, Plaintiff presents a conclusory challenge to the ALJ's consideration of the State agency opinions, arguing that "although the ALJ found that these reports were partially persuasive, he failed to explain his rational for only adopting those elements which were inconsistent [sic] with his desired RFC."  (ECF No. 8 at 14).  The Commissioner argues Plaintiff waived her argument because she "never identifies whether she is suggesting the ALJ erred in evaluating the state agency findings as to her physical or mental limitations (or both)" and she does not "explain what findings the ALJ failed to adopt or provide any specifics as to how the ALJ's evaluation of the state agency physical of [sic] mental findings were lacking."  (ECF No. 9 at 17-18).

The Commissioner's argument is persuasive.  Plaintiff fails to identify which portions of the State agency opinions she contends the ALJ improperly rejected or adopted.  (ECF No. 8 at 14).  Thus, she has waived her argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.").  To the extent Plaintiff's reference to the vocational expert's testimony regarding handling, fingering, and reaching 50% of the time can be construed as an argument the ALJ failed to properly consider the State agency opinions on this issue, such argument is unavailing.  The State agency consultants opined that Plaintiff was "limited to frequent overhead and handling due to fibromyalgia."  (ECF No. 7, Page ID #: 110, 122).  The ALJ included this limitation in the ultimate RFC.  (*Id.* at PageID #: 51 ("she can frequently reach overhead and frequently handle)).

Plaintiff fails to identify any evidence supporting greater limitations such that it is unclear how she alleges the ALJ erred.

### g.  Summary

Overall, the ALJ considered the relevant medical opinions and explained his treatment of each, specifically as to each opinion's supportability and consistency with the medical records, and his conclusions are supported by substantial evidence.  While Plaintiff highlights records that may have supported different ultimate conclusions as to the opinions, "a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is no sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."  *Greene ex rel. Green v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010).  At best, Plaintiff's arguments are a "veiled attempt to have [the Court] reweigh the evidence," but such is not an appropriate role for the Court.  *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1 , 2022); *see Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that the court "reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").  Accordingly, Plaintiff's first issue does not warrant remand.

### 3.  Consideration of All Impairments

In her second issue, Plaintiff argues that the ALJ erred when he failed to consider all of her impairments and limitations as required by SSR 96-8p.  However, Plaintiff's argument is confusing and difficult to follow as she seems to take a "kitchen-sink" approach where she vaguely cites multiple regulations and cases without setting forth a clear position as to how the

ALJ erred.  (*See* ECF No. 8 at 15-18).  It appears Plaintiff is arguing that the ALJ failed to properly consider the impact and limitations of her fibromyalgia based on her subjective complaints regarding pain.  (*Id.*).

The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective symptom complaints and Plaintiff's argument is "nothing more than a request for this Court to try the case de novo."  (ECF No. 9 at 18).  The Commissioner asserts that in evaluating Plaintiff's symptoms, the ALJ properly considered the duration, frequency, and intensity of her symptoms along with the precipitating and aggravating factors; Plaintiff's medication and other treatments; and her activities of living as reflected in the record.  (*Id.* at 19-20).

As Plaintiff argues, SSR 96-8p requires an ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 98-6p, 1996 WL 374184, at *5.  Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.* at *7.  When evaluating subjective complaints, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304.  Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors the precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions.  SSR 16-3p, 2017 WL 5180304, *7-8.  The ALJ need not analyze all seven factors but should show that he considered

the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).  An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

Here, the ALJ recognized Plaintiff's complaints of pain she attributed to her fibromyalgia and her testimony regarding the impact on her ability to complete various activities.  (ECF No. 7, PageID #: 52).  The ALJ explained his conclusion that Plaintiff's physical symptoms were not as severe as alleged:

> The claimant's allegations of disabling physical functional limitations are not entirely consistent with the evidence of record. As to the claimant's allegations of daily pain in her hands, ankles, and back, the record is not entirely consistent with those allegations. The claimant generally reported difficulty with fibromyalgia (e.g., 1F/48-49), and she reported some back pain at a mental health appointment (1F/42 (06/10/22)). At her consultative examination, she reported that her fibromyalgia mainly impacts her bilateral shoulders and hands; but on examination, she had some weakness in her upper extremities, but she was able to lift, carry, and handle light objects; her straight leg test was negative; her fine and gross manipulation were grossly normal; and her sensation, reflexes, and range of motion was good in all her extremities (2F/5-6, 8-13). Similarly, when the claimant sought for her provider to fill out her paperwork and she reported back and hand pain, her examination was unremarkable (7F/2-10). The claimant testified that she cares for her mother, who was injured; she helps her wash her clothes and bathe her (Testimony). She also cares for pets and is able to do laundry (4E/3-4; 9E/2). These activities as described by the claimant involve the use of her hands, back, and ankles for mobility. Also, the claimant generally did not report such symptoms to medical providers consistently throughout the treatment records, which is not entirely consistent with experiencing these symptoms as she has reported. After reviewing the medical evidence of record available to them, including some of the aforementioned physical examination findings and reports,

27

the state agency medical consultants opined that the claimant is capable of light exertion with some additional limitations on the use of her upper extremities, but no significant limitations on postural activities (2A/4-7; 4A/5-7). Those findings are consistent with the evidence of record, but not entirely consistent with the claimant's allegations of more significant limitations.

As to the claimant's allegations of difficulty standing longer than 15-30 minutes, walking for longer than 15 minutes, and sitting for longer periods (like driving), the allegations are not entirely consistent with the evidence of record. At the claimant's consultative examination, her gait was steady and symmetric; her sensation and reflexes were normal throughout; she could squat and rise with ease, could rise from sitting without assistance, and got up and down from the exam table with ease; her heel-toe walk and tandem walking were normal; she could stand and hop on one foot bilaterally; she had good range of motion in all of her extremities; and her lower extremities had normal strength, sensation, and motor function (2F/5-6, 8-13). Her other physical examinations were unremarkable (e.g., 7F/2-10). Even the claimant's treating physician opined that the claimant is capable of sitting for 120 minutes at one time and sitting for at least 6 hours in an 8-hour workday (5F/2), which is inconsistent with the claimant's allegations of more significant limitations. After reviewing the evidence of record, including some of the aforementioned findings, the state agency medical consultants opined, in part, that the claimant is capable of light exertion without additional restrictions on standing, walking, or sitting (2A/4-7; 4A/5-7), which is consistent with the record. The claimant's allegations are not entirely consistent with these persuasive portions of the state agency medical consultants' opinions.

The undersigned is cognizant that the degree of limitation that a person might experience from fibromyalgia and other impairments might not necessarily be reflected in a particular treatment note; however, in the instant matter, the longitudinal record does not reflect a significant degree of physical functional limitation from the claimant's physical impairments. Her physical examinations do not reflect the degree and frequency of pain one would expect based on her testimony. The physical examinations findings also do not support loss of strength, range of motion, sensation, reflexes, or coordination that would support a disabling degree of physical limitation. The medical evidence, even with a consideration of limitations from pain, does not support a greater degree of limitation than that which is set forth in the above

> residual functional capacity assessment.
>
> In sum, the claimant's alleged physical functional limitations are not entirely consistent with the claimant's reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the residual functional capacity assessment above.

(ECF No. 7, PageID #: 58-59).

This discussion makes clear that the ALJ found Plaintiff's testimony regarding the severity of her pain not credible based on proper factors, including the lack of corresponding objective medical evidence; Plaintiff's infrequent complaints of pain to her providers; and Plaintiff's self-reported activities. *See* SSR 16-3p, 2017 WL 5180304, *7-8. While Plaintiff argues her testimony was corroborated by "medical evidence," she largely cites to records reflecting her own subjective complaints rather than objective medical findings. (ECF No. 8 at 16-17; *see* ECF No. 7, PageID #: 316 (noting Plaintiff's reports of back and joint pain at a four on a ten-point scale); 358 (noting Plaintiff's reports of her symptoms in the "History of Present Illness"); 419 (noting Plaintiff's reports of back pain and bilateral hand swelling). The *only* objective record Plaintiff cites is Oh's observation that she had "some weakness in her bilateral upper extremities," but Plaintiff fails to acknowledge that the remainder of this opinion indicates that she maintained "4/5 strength throughout all her shoulder and elbow exercises." (ECF No. 7, PageID #: 362).

Ultimately, while the ALJ recognized Plaintiff's fibromyalgia diagnosis as a severe impairment and considered her subjective complaints of pain, he properly found that additional functional limitations were not supported by the overall record, including the objective medical evidence and Plaintiff's own reports of her daily activities. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (ALJ did not err in considering the lack of objective

evidence to support plaintiff's pain complaints related to fibromyalgia because "a *diagnosis* of fibromyalgia does not automatically entitle [a plaintiff] to disability benefits" and the overall record did not support additional limitations).  Substantial evidence supports this decision, and because the Court does not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding.  *Cross*, 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Marquez's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 29, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).